**TILLOTSON, LTD., Appellant,**

v.

**WALBRO CORPORATION, Appellee.**

No. 86–1189.

United States Court of Appeals, Federal Circuit.

Oct. 15, 1987.

Jeffrey A. Sadowski, of Harness, Dickey & Pierce, Birmingham, Mich., argued for appellant. With him on the brief was Ernest A. Beutler, of Harness, Dickey & Pierce, Birmingham, Mich.

George E. Frost, of Barnes, Kisselle, Raisch, Choate, Whittemore and Hulbert, Birmingham, Mich., argued for appellee. With him on the brief were Robert C. Choate and William H. Francis, of Barnes, Kisselle, Raisch, Choate, Whittemore and Hulbert, Birmingham, Mich.

Before DAVIS, SMITH and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Tillotson, Ltd. (Tillotson) appeals from a judgment of the United States District Court for the Eastern District of Michigan, Case No. 85–CV–10270–BC, granting summary judgment in favor of Walbro Corporation (Walbro) and holding Reissue Patent No. 31,233 ('233), assigned to Tillotson, invalid under 35 U.S.C. § 251 (1982). We vacate and remand.

### Background

U.S. Patent No. 3,738,608 ('608) issued to Warren D. Nutten and Bernard C. Phillips on June 12, 1973, and was assigned to Borg–Warner Corporation, which subsequently assigned its rights to Tillotson. The '608 patent disclosed and claimed a vibration responsive valve for automatically modifying the mixture of fuel and air delivered to an internal combustion engine, typically a two-cycle chain saw engine, in order to govern the engine and prevent damage due to excessively high speed. Claim 1 of the '608 patent, the only independent claim, provided as follows:

1. A valve unit of the character disclosed including, in combination, a cylindrically-shaped housing having a bore therein defining a chamber, a ball-shaped valve member disposed for relative movement in the chamber, a seat for the valve member shaped to define a fuel port, *spring means in the housing normally biasing the valve member to port-closing position, said spring means being the sole force biasing the valve member to port-closing position,* passage means opening into the chamber for admitting fuel from a supply into the chamber, the mass of the valve and the pressure of the spring means being calibrated to be responsive to a predetermined frequency of vibration to effect movement of the valve member at said frequency away from port-closing position to permit fuel flow through said port. (Emphasis added.)

On October 19, 1979, six years after the issuance of the '608 patent, Borg–Warner Corporation, Tillotson's predecessor in interest, filed a reissue application under the "no defect" reissue practice available at that time, seeking reconsideration of the '608 patent in view of newly-discovered prior art. 37 C.F.R. § 1.175(a)(4) (1979).

In response to the examiner's rejection of the original claims of the '608 patent which were incorporated in the reissue application, a supplemental reissue declaration was filed pursuant to 37 C.F.R. § 1.175(a)(3) (1979), together with amended claims. The supplemental declaration alleged error by reason of the patentees claiming more than they had a right to claim. In addition to the spring means for closing the valve as set forth in the original claims, the declaration referred also to the presence of a "pressure differential between the mixing passage and fuel chamber." The operation of this spring means and pressure differential are perhaps best understood by reference to Figures 7, 8 and 11 of the '233 reissue patent and the explanation thereof. Figures 7 and 8 depict a conventional carburetor of the type used on chain saw engines.

Fig. 7    Fig. 8

The carburetor is described as having an air/fuel mixing passage 76 which includes an air inlet region 77, a venturi 78 having a restricted region 79, and an outlet region 80, where the carburetor is affixed to the intake manifold of the engine. When the engine is operating, the venturi provides a vacuum pressure which aspirates fuel from the fuel chamber 114 through a metering orifice 138 into the air stream. A throttle valve 94 varies the flow of air and fuel into the engine. If the engine is abruptly relieved of load, as for example when the chain saw passes out of a workpiece after a cut is completed, the throttle may still be open and engine speed may increase rapidly. To protect against engine damage from such a speed increase, the claimed valve assembly limits engine speed by means of a normally closed valve which opens to supply excess fuel to create an overly rich fuel/air mixture in response to engine vibrations associated with high engine speed.

One embodiment of the claimed valve assembly is illustrated in Figure 11.

Fig. 11

The carburetor body 74 defines a mixing passage 76 through which the air/fuel mixture flows into an engine intake manifold when the engine is operating. A by-pass passage extends from fuel chamber 114, as indicated by reference numerals 200 and 192. A ball 208 normally closes this passage by closing port 205. A spring 209 exerts a biasing force on the ball towards the port-closing position to bias the ball against its seat to close the port. If the engine speed becomes excessive, the carburetor body 74 vibrates in response to engine vibrations causing the ball valve to disengage from its seat and permit excess fuel to flow through the by-pass passage. As the mixture in mixing passage 76 becomes overly rich, the engine speed is thereby slowed.

After the claims were amended, *inter alia*, to delete the phrase "sole force" and to include reference to the pressure differential, the examiner allowed the claims, and Reissue Patent No. Re 31,233 ('233) was issued on May 10, 1983, ten years after the issuance of the original '608 patent. Claim 8 of the '233 reissue patent, which replaced original claim 1, reads as follows:

> 8. An overspeed governing valve assembly for an internal combustion engine, which valve assembly is responsive to engine vibrations to introduce additional fuel into the engine for engine speed control, and which assembly in-

cludes, in combination, a cylindrically-shaped housing defining a first chamber, a ball-shaped valve member in said chamber disposed for relative movement therein in either a transverse or lengthwise direction regardless of the housing position with respect to the engine, said housing defining a seat for a valve member, which seat defines a fuel port, *spring means in the housing normally biasing the valve member to port-closing position, said housing defining a fuel chamber and a mixing passage, operation of the engine developing a pressure differential between the pressures in the fuel chamber and mixing passage, both of which pressures are below atmospheric pressure, said spring means in cooperation with said pressure differential combining to bias said ball-shaped valve member to the port closing position,* and said housing defining a fuel passage opening into the first chamber for admitting fuel into the first chamber, the mass of the valve member and the pressure of the spring means being calibrated to be responsive to a predetermined frequency of engine vibration to effect movement of the valve member at said predetermined frequency away from the port-closing position to permit fuel flow through said fuel port. (Emphasis added.)

On June 7, 1985, Tillotson filed suit against Walbro for infringement of the '233 reissue patent. Walbro answered and moved for summary judgment on the grounds of noninfringement, laches, intervening rights, and invalidity of the '233 reissue patent under 35 U.S.C. § 103 (1982) for obviousness and/or under 35 U.S.C. § 251 (1982) for enlarging the scope of the original claims more than two years after the issuance of the '608 patent. Following a hearing, the district court granted Walbro's motion for summary judgment on the ground that claim 8 broadened the scope of original claim 1 more than two years after issuance of the '608 patent, making the '233 reissue patent invalid under 35 U.S.C. § 251 (1982). The court stated:

The Court took the Defendant's Motion for Summary Judgment under advise-

ment at the close of oral arguments for the somewhat unique reason that the defendant's position seemed to the court to be obviously correct. Perhaps something was being missed. Upon reexamination of Claim 1 in the original patent of Claim 8 in the reissue patent and the arguments in the briefs, the Court is left with the conclusion that Claim 1 can only be construed to say that the sole means of "biasing the valve member to the port-closing position" not only when the machine is not in operation, but when the machine is in operation, is a spring. A carburetor in which there were dual or combined means of maintaining the value [sic: valve] in position during operation could not infringe the original patent, but could infringe the reissued patent. The reissued patent did enlarge the scope of the claims of the original patent and is, therefore, invalid. The defendant's motion for summary judgment is granted.

Tillotson's motion for reconsideration was denied without additional findings.

## ISSUE

The sole issue before this court is whether the district court was correct in holding that no genuine issue of material fact existed as to whether the '233 reissue patent broadened the scope of the '608 patent.

## DISCUSSION

This court has stated that summary judgment under Rule 56, Fed.R.Civ.P., is appropriate in a patent case where no genuine issue of material fact remains for decision and the movant is entitled to judgment as a matter of law. *Moeller v. Ionetics, Inc.,* 794 F.2d 653, 656, 229 USPQ 992, 994 (Fed. Cir.1986); *Porter v. Farmers Supply Service, Inc.,* 790 F.2d 882, 884, 229 USPQ 814, 815 (Fed.Cir.1986). However, in a summary judgment motion to invalidate an existing patent, the burden on the moving party is indeed heavy. The issued patent carries a statutory presumption of validity under 35 U.S.C. § 282 (1982), which must be overcome by proving facts supported by clear and convincing evidence. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d

1367, 1375, 231 USPQ 81, 87 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987). Further, in considering the motion, the court must view the evidence in the most favorable light to the non-movant and draw all reasonable inferences in the non-moving party's favor. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Moeller,* 794 F.2d at 656, 229 USPQ at 994.

Tillotson asserts that genuine issues of fact exist which make summary judgment improper.[1]

Claim scope or construction is a question of law and the existence of a dispute as to that legal issue does not preclude summary judgment. *Howes v. Medical Components, Inc.,* 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed.Cir.1987); *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 654, 223 USPQ 706, 707 (Fed.Cir.1984). When a claim is in dispute, however, it is necessary to look at certain extrinsic evidence, including the specification, the prosecution history, and other claims. *See, e.g., Howes,* 814 F.2d at 643, 2 USPQ2d at 1273; *Moeller,* 794 F.2d at 656, 229 USPQ at 994; *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985). Underlying factual disputes may thus arise pertaining to this extrinsic evidence which preclude summary judgment. *Howes,* 814 F.2d at 643, 2 USPQ2d at 1273; *Moeller,* 794 F.2d at 657, 229 USPQ at 995.

■ With respect to claim construction, the district court concluded that original claim 1 could "only be construed to say

that the *sole means* of 'biasing the valve member to the port closing position' . . . is a *spring* " (emphasis added). In arriving at this conclusion, the district court gave no indication that it performed the claim analysis required by this court in *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir. 1983) (claims must be construed "in connection with the other parts of the patent instrument and with the circumstances surrounding the inception of the patent application") (quoting *Autogiro Co. of America v. United States,* 384 F.2d 391, 396–97, 181 Cl.Ct. 55, 155 USPQ 697, 702 (1967)). While there is no requirement that a trial judge make findings of fact in granting a motion for summary judgment, findings are often extremely helpful to a reviewing court. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this case, it would be helpful to have a statement of the undisputed facts. *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1020, 226 USPQ 881, 883 (Fed.Cir.1985).

■ On the record before us, we note that the district court stated the correct test for determining whether the reissue claim is broader in scope,[2] but we cannot agree that claim construction in this case is as simple as the court's abbreviated analysis would indicate. It does not summarily follow that the phrase "sole force," appearing in the original claim but omitted from reissue claim 8, automatically results in a broadening of the scope of the claims under section 251.

---

1. In the course of arguing that summary judgment should not have been granted to Walbro, Tillotson's brief (p. 33) says explicitly that

   in this case, there are questions of fact as to: (1) What is the scope of Claim 1 relative to factual interpretations based on extrinsic evidence, including the file wrapper history and the expert testimony when Claim 1 is properly *constructed [sic: construed] to preserve its* validity;
   (2) What is the scope of Claim 8 relative to factual interpretations based on extrinsic evidence, including the file wrapper history and the expert testimony when Claim 8 is read properly; and

(3) What *interpretations of the file wrapper* and expert testimony can be made to define the scope of Claims 1 and 8.

2. A claim of a reissue application is broader in scope than the original claims *if it contains within its scope any conceivable apparatus or process which would not have infringed the* original patent. *In re Self,* 671 F.2d 1344, 213 USPQ 1 (CCPA 1982); *In re Ruth,* 278 F.2d 729, 47 CCPA 1014; 126 USPQ 155 (1960). A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects. *In re Bennett,* 766 F.2d 524, 226 USPQ 413 (Fed.Cir.1985); *Ball Corp. v. United States,* 729 F.2d 1429, 221 USPQ 289 (Fed.Cir.1984).

**1038**

In this regard, Tillotson contends that the phrase in original claim 1, *"spring means* in the housing *biasing* the valve member to port-closing position, said spring means being the sole force biasing the valve member to port-closing position,"* (emphasis added) renders that claim a means plus function claim under 35 U.S.C. § 112, paragraph 6 (1982), and that, as such, claim 1 must be construed to cover embodiments of the "spring means" for "biasing" disclosed in the specification and equivalents thereof.[3] According to Tillotson, when viewed in this manner the "spring means" for "biasing" must be interpreted to include the "normal operating (vacuum) pressures, forces and fields" resulting from operation of the engine. In the embodiments of the invention discussed in the specification, there are references to reduced pressure and to venturi structures which, during engine operation, would result in a pressure differential between the mixing passage and the fuel chamber. (The venturi structure is illustrated in Figures 7 and 8.)

Further, Tillotson contends that the phrase "sole force," interpreted in view of the prosecution history, does not exclude inherent operating forces of the carburetor. The specification of the '608 patent states that the desired change in fuel to air ratio is effected through a "[valve] means responsive to engine vibrations or disturbances *independently of the ... reduced pressure* existent in the ... carburetor providing the normal fuel and air mixture." (Emphasis added.) Additional statements indicate that the "sole force" limitation excludes only "external" sources of pressure. Furthermore, it was argued in Amendment A, filed during prosecution of the '608 patent, that above-atmospheric fuel pressure from a fuel pump, as disclosed in the prior art patent to Dobbertin, was an "added force" in addition to the pressure of the spring and, thus, was distinguishable from the claimed valve assembly in which there

were "no forces other than the biasing spring 209 to be overcome by engine vibration to displace the ball valve." Reference continued to be made in the Amendment, however, to drawings illustrating a venturi constriction which would inherently produce a reduced pressure in the mixing passage.

Interpretation of the claims of the '233 reissue patent is also necessary in order to determine whether the reissue patent enlarges or broadens the scope of the original patent claims. It was alleged in the supplemental reissue declaration that the '608 patent was "wholly or partly invalid by reason of the patentees claiming *more* than they had a right to claim" in that they did not claim a valve assembly "having a bias spring acting as the *sole force in the first chamber* to maintain the ball-shaped valve member in the port-closing position, *and further having a pressure differential between the mixing passage and fuel chamber*, which pressure differential operates in combination with the bias spring to maintain the valve member in the closing position...." (Emphasis added.)

According to Tillotson, the prosecution history establishes that the reissue claims are narrower, not broader, than the original claims. It contends that the reissue declaration, together with remarks made during prosecution of the '233 reissue patent, indicate that the "sole force" limitation referred only to the chamber containing the valve, and not to the mixing passage. In the amendment dated November 17, 1980, filed during prosecution of the '233 reissue patent, it was stated that reissue claim 8 (which at that time still contained the "sole force" limitation) "unequivocally defines the action of the spring as the '*sole force* applied *within the chamber* [195] biasing the valve member to port-closing position....'" (Emphasis added.) When the examiner continued to object to the phrase "sole force," an amendment was proposed deleting the phrase and explicitly noting

---

**3.** 35 U.S.C. § 112, paragraph 6, provides:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in sup-

port thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

the presence of the pressure differential. At the same time, however, an explanation was offered for the "reciting of the spring as the sole force acting in chamber 195...." It was stated that the pressure differential was "not [a force] acting within chamber 195 to bias the valve closed," but was "in fact, *acting on* the face exposed to passage 205 and defined by the intersection of the ball 208 and the seat 204." It was also stated that the examiner, in "asserting that a positive pressure acts within the chamber 195," was "apparently utilizing a zero level base line from which to measure pressure," whereas industry practice was to utilize atmospheric pressure as a basis. Under industry practice, therefore, a vacuum (pressure below atmospheric) would be considered a lack of pressure. The proposed amended claims were subsequently allowed without comment on this explanation, acceptance of which would tend to support Tillotson's position.

 The issue of material fact required to be present in order to entitle the non-moving party to proceed to trial in the face of a motion for summary judgment need not be resolved conclusively in favor of the non-moving party. "All that is required is a showing of sufficient evidence supportive of the existence of the claimed factual dispute to require a judge or jury to resolve the differing versions of the truth through a trial." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61, 225 USPQ 697, 700–01 (Fed.Cir.1985). We are persuaded, in view of the need for careful interpretation of the original and reissue claims in light of the specification, the prosecution history, and the alleged industry practice of utilizing atmospheric pressure as a baseline for measurement, that there is not an absence of disputed issues of material fact and that summary judgment was improper. Of course, claim interpretation is ultimately a question of law, but resolution of that question turns in significant part on underlying facts. In view of the relatively skimpy materials before us, we think the better course is to remand for further ventilation by the trial court in the usual manner. Evidence, including expert testimony, will likely be helpful in determining the thrust and meaning of the prosecution histories and the prior art. *See Howes v. Medical Components, Inc.*, 814 F.2d at 643, 2 USPQ2d at 1273; *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 974–77, 226 USPQ 5, 8–10 (Fed.Cir.1985); *Lemelson*, 760 F.2d at 1260–61, 225 USPQ at 701, 705. Though claim interpretation is a question of law, there is no prohibition on the court's obtaining potentially useful aid.

CONCLUSION

Accordingly, we vacate the grant of summary judgment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.