# United States Court of Appeals for the Federal Circuit

---

**IN RE: MIODRAG KOSTIC, GUY VANDEVELDE,**
*Appellants*

---

2023-1437

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 16/667,530.

---

Decided: May 6, 2025

---

SHAUN DARRELL GREGORY, Taft Stettinius & Hollister LLP, Washington, DC, argued for appellants. Also represented by BRIAN SHERWOOD SEAL.

MICHAEL S. FORMAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Coke Morgan Stewart. Also represented by AMY J. NELSON, MAUREEN DONOVAN QUELER.

---

Before STOLL, CLEVENGER, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge*.

Miodrag Kostic and Guy Vandevelde appeal from a decision of the Patent Trial and Appeal Board sustaining the examiner's rejection of claim 3 of Reissue Application No. 16/667,530. *Ex parte Kostic*, No. 2022-003326,

2022 WL 17223434 (P.T.A.B. Nov. 23, 2022) ("*Decision*"). Because the Board correctly determined that reissue claim 3 is broader than original claim 3, we affirm.

## I. BACKGROUND

Appellants are the owners and listed inventors of U.S. Patent No. 8,494,950, titled "System for Conducting an Exchange of Click-Through Traffic on Internet Web Sites." '950 patent; *see also* J.A. 81. The '950 patent is directed to "method[s] implemented on an online network connecting websites to computers of respective users for buying and selling of click-through traffic." '950 patent col. 18 ll. 21–23. Click-through links are links placed on other websites (e.g., search engines or aggregators) to attempt to attract visitors. *Id.* col. 1 ll. 31–36. Typical prior art transactions would require a buyer (e.g., an advertiser) to pay a seller (e.g., a search engine) an upfront fee in addition to a fee for every visitor who clicks the link on the seller's website to visit the buyer's website. *Id.* col. 1 ll. 40–44. The buyer typically would not "know in advance what volume, responsiveness, or quality of visitors from the seller's web site [would] click on the link to the buyer's web site." *Id.* col. 1 ll. 46–48.

The '950 patent discloses a method where the buyers and sellers first conduct a trial of click-through traffic to give each party more information before a bidding process and a sale process take place. *See, e.g.*, *id.* col. 4 l. 38 to col. 5 l. 1. The specification also discloses a "Direct Sale Process" permitting a seller to bypass the trial and bidding process. *Id.* col. 8 ll. 26–36. In the "Direct Sale Process," sellers may "list their website traffic parameters and their price/click requirement . . . and start the sale process immediately." *Id.*

Claim 1 of the '950 patent recites:

1. A method implemented on an online network connecting websites to computers of respective

users for buying and selling of click-through traffic from a first exchange partner's web site comprising the steps of:

(a) registering a plurality of exchange partners interested in buying click-through traffic of visitors from other exchange partners, wherein after the exchange partners have registered, a first exchange partner offers the click-through traffic from its web site for sale, and those of the other exchange partners interested in the first exchange partner's click-through traffic establish an exchange trial process to measure the click-through traffic that would be sent from the first exchange partner's web site to the web sites of each of the respective other exchange partners;

(b) establishing a link from a first exchange partner's web site to an intermediary web site, and storing respective links to the plurality of other exchange partners' web sites at the intermediary web site, wherein the respective link to each respective other exchange partner's web site can be addressed through the intermediary web site by a corresponding exchange partner-specific link displayed on the first exchange partner's web site during a trial period to be conducted with each corresponding other exchange partner;

(c) *conducting a pre-bidding trial of click-through traffic* from the first exchange partner's web site with the plurality of interested other exchange partners by linking the first exchange partner's web site through the intermediary web site to

each interested other exchange partner's web site in turn during a given trial period so that each other exchange partner can assess what click-through traffic they will receive from the first exchange partner's web site;

(d) *conducting a bidding process after the trial period is concluded*, in which the interested other exchange partners who participated in the pre-bidding trial can then bid a price each is willing to pay to obtain the click-through traffic from the first exchange partner's web site; and

(e) enabling the first exchange partner to select a winning bid of an other exchange partner in the bidding process in order to conclude a sale of the right to obtain the click-through traffic from the first exchange partner's web site to the winning exchange partner's web site.

*Id.* col. 18 ll. 21–65 (emphases added).

Claim 3 recites:

3. A method according to claim 1, wherein the intermediary web site enables interested exchange partners to conduct a direct exchange of click-through traffic *without a trial process*.

*Id.* col. 19 ll. 7–10 (emphasis added).

The '950 patent issued on July 23, 2013. '950 patent. On October 29, 2019, Appellants filed a reissue application stating that an error necessitated reissue: "[d]ependent claim 3 fails to include limitations of claim 1 from which it depends." J.A. 343–44; *see Decision* at n.1, *6. Appellants stated that original claim 3 "expressly excludes the trial bidding process referred to in the method of claim 1," which

would make it invalid under 35 U.S.C. § 112.  J.A. 339; *see Decision* at \*5–6.  Appellants attempted to rewrite claim 3 in independent form and claim a method that omits a trial process.  J.A. 337–38.

The examiner issued a non-final Reissue Office Action, rejecting the reissue application and finding that it was a broadening reissue application outside the permissible two-year period.[1]  J.A. 274; *see id.* at 272–77; 35 U.S.C. § 251.  Specifically, the examiner stated that original "claim 3 is interpreted to require not only the performance of the entirety of claim 1 (including all of the trial-related steps), but further to require a 'direct' sale/exchange without its own trial, beyond the trial already present in claim 1." J.A. 277.  Thus, the examiner found that reissue claim 3 broadened the scope of original claim 3 by not requiring a trial process.  *Id.*  The examiner also rejected reissue claim 3 as obvious over the combination of Beyda[2] and Applicant-Admitted Prior Art.  J.A. 280–82.

Appellants responded with an amendment to reissue claim 3, rewriting the claim language in the below independent form:

> 3. A method implemented on an online network connecting websites to computers of respective users for buying and selling of click-through traffic from a first exchange partner's web site via an intermediary website which enables interested exchange partners to conduct *an exchange of click-through traffic with a trial process or a direct*

---

[1]    The examiner also made several other determinations not at issue in this appeal.  *See* J.A. 273–74, 277–80.

[2]    U.S. Patent Application Publication No. 2002/0082914 (filed Dec. 26, 2000; published June 27, 2002) ("Beyda").

*exchange of click-through traffic without a trial process*, the method comprising the steps of:

(a) registering a plurality of exchange partners interested in buying click-through traffic of visitors from other exchange partners, wherein after the exchange partners have registered, a first exchange partner offers the click through traffic from its web site for sale, and those of the other exchange partners interested in the first exchange partner's click-through traffic establish *an exchange trial process to measure the click-through traffic* that would be sent from the first exchange partner's web site to the web sites of each of the respective other exchange partners *or a direct exchange of click-through traffic without a trial process*;

(b) establishing a link from a first exchange partner's web site to an intermediary web site, and storing respective links to the plurality of other exchange partner's web sites at the intermediary web site, wherein the respective link to each respective other exchange partner's web site can be addressed through the intermediary web site by a corresponding exchange partner-specific link displayed on the first exchange partner's web site during a trial period to be conducted with each corresponding other exchange partner or a direct exchange;

(c) conducting a pre-bidding trial of click-through traffic from the first exchange partner's web site with the plurality of interested other exchange partners when the trial process is used by linking

the first exchange partner's web site through the intermediary web site to each interested other exchange partner's web site in turn during a given trial period so that each other exchange partner can assess what click through traffic they will receive from the first exchange partner's web site;

(d) conducting a bidding process after the trial period is concluded when the trial process is used, in which the interested other exchange partners who participated in the pre-bidding trial can then bid a price each is willing to pay to obtain the click through traffic from the first exchange partner's website;

(e) conducting a bidding process without a trial process when the direct exchange is used in which the interested other exchange partners can then bid a price each is willing to pay to obtain the click-through traffic from the first exchange partner's web site; and

(f) enabling the first exchange partner to select a winning bid of another exchange partner in the bidding process in order to conclude a sale of the right to obtain the click-through traffic from the first exchange partner's web site to the winning exchange partner's web site.

J.A. 269–70 (emphases added);[3] *see also* J.A. 207–08. The examiner issued a final Reissue Office Action, in relevant part maintaining the rejections regarding reissue claim 3 for the same reasons as set forth in the non-final Reissue Office Action. *Decision* at *3–4; J.A. 230–45.

Appellants appealed to the Board, which affirmed the rejections of reissue claim 3 under 35 U.S.C. § 251 and 35 U.S.C. § 103.[4] *Decision* at *5–9. The Board found that reissue claim 3 was an improper broadening reissue under 35 U.S.C. § 251(d) because original dependent claim 3 should be construed to be consistent with original claim 1 by including a "second sale of click-through traffic from a second web site as a direct exchange of click-through traffic without a trial process." *Id.* at *5 (emphasis omitted). Alternatively, the Board noted that regardless of any claim construction, "the scope of reissue claim 3 is not the same scope as patent claim 3" because "the maximum scope of patent claim 3 is construed by statute to be bounded by the scope of patent claim 1." *Id.* at *7 (emphasis omitted). The Board also affirmed the obviousness rejection under 35 U.S.C. § 103, finding that Beyda, in combination with the prior art disclosed in the patent, rendered obvious reissue claim 3. *Id.* at *8.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

---

[3] For clarity, we have implemented Appellants' proposed edits to the claim language that are indicated by underlining and bracketing in the original reissue amendment text. *See* J.A. 269–70; J.A. 207–08.

[4] The Board also made other determinations not at issue here. *See Decision* at *3–4, *7; *see generally* Appellants' Br.

## II. DISCUSSION

Appellants contend that the Board erred in affirming the rejection of reissue claim 3 under 35 U.S.C. § 251 as an improper broadening reissue. Appellants' Br. 26–30. Appellants also argue that the Board erred in affirming the rejection of reissue claim 3 as obvious over Beyda in combination with Applicant-Admitted Prior Art. Appellants' Br. 30–33.

"No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent." 35 U.S.C. § 251(d).[5] "Whether amendments made during reissue enlarge the scope of the claim, and therefore violate § 251, is a matter of claim construction" and is thus reviewed under the same standard of review as claim construction. *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 888 (Fed. Cir. 2015). "We review claim construction de novo and any subsidiary factual findings based on extrinsic evidence for substantial evidence." *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022). "A claim of a reissue application is broader in scope than the original claims if it contains within its scope [at least one] conceivable apparatus or process which would not have infringed the original patent." *Medtronic, Inc. v. Guidant Corp.*, 465 F.3d 1360, 1374 (Fed. Cir. 2006) (quoting *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999)).

As a preliminary matter, Appellants argue that the Board erred in its construction of original claim 3 to require two simultaneous transactions (one involving a trial process, and one involving a direct sale without a trial

---

[5]    Here, the reissue application was filed more than two years after the grant of the original patent. *See Decision* at n.1.

process), rather than reading it to be incompatible with the independent claim from which it depends under 35 U.S.C. § 112. *See generally* Appellants' Br. 14–26; *see Decision* at \*5. We do not need to resolve this claim construction dispute[6] because adopting Appellants' position that the actual scope of original claim 3, "[a]s drafted," does not "comply with 35 U.S.C. § 112 (fourth paragraph)" does not alter the result of our analysis. Appellants' Br. 25. *See Decision* at \*4 n.4 ("[T]hese different [claim] interpretations yield no difference in the ultimate result.").

Appellants argue that the proper inquiry is not whether the scope of reissue claim 3 is broader than the scope of original claim 3, but whether the scope of reissue claim 3 is broader than the "intended scope" of original claim 3. Appellants' Br. 26. We disagree. "[W]e construe the claim as written, not as the patentees wish they had written it." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (en banc) ("No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit. The subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)."), *aff'd*, 517 U.S. 370 (1996). In the closely analogous context of certificates of correction under 35 U.S.C. § 255, we have held that the "suggestion that we compare claim scope by considering what was 'intended' by the parties, rather than by construing the claims for what they actually recite, is completely without merit." *Superior*

---

6    We separately address and reject Appellants' position that original claim 3 should be construed as intended to "capture the alternative of a direct exchange without a trial process." Appellants' Br. 25.

*Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1375 (Fed. Cir. 2001). Thus, our precedent counsels in favor of comparing the scope of a reissue claim to the actual scope of an original claim, rather than what the inventors subjectively intended to claim.

Appellants provide no reason to depart from this approach in the context of 35 U.S.C. § 251(d). Indeed, Appellants' argument is contradicted by the plain text of 35 U.S.C. § 251(d), which prohibits reissue patents "enlarging the scope of the claims," not reissue patents enlarging the intended scope of the claims. *See Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 5 (1985) ("The starting point is the language of the statute."). Even if there were ambiguity in 35 U.S.C. § 251(d), Appellants' argument is also inconsistent with the purpose and history of 35 U.S.C. § 251(d). *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 236 n.3 (2010) ("Although reliance on legislative history is unnecessary in light of the statute's unambiguous language, we note the support that record provides."). The bar on broadening reissues was created to protect "mechanics and manufactures, who had just reason to suppose that the field of action was open." *Miller v. Brass Co.*, 104 U.S. 350, 354–55 (1881); *see also In re Staats*, 671 F.3d 1350, 1354 (Fed. Cir. 2012) ("The current version of . . . . section 251 was designed to codify prior Supreme Court authority," including *Miller*); S. Rep. No. 82-1979, at 26 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2419 (noting that the purpose of § 251 is "codifying the present rule of decision"). Looking to the intended scope rather than the actual scope of the original claim would prejudice competitors who had reason to "rely on the implied disclaimer involved in the terms of the original patent." *Miller*, 104 U.S. at 356; *see also Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) (holding that in construing nonsensical claims, the court should invalidate claims to avoid "unduly burdening competitors who must determine the scope of

the claimed invention based on an erroneously drafted claim"). The text, history, and purpose of 35 U.S.C. § 251 all support looking at the actual scope of the original claim language, not the intended scope. Accordingly, when considering whether a reissued patent broadens the scope of the original patent under 35 U.S.C. § 251(d), we hold that we look to the actual scope of the claim-at-issue, not the subjective intended scope of the inventors.

Turning to the claim language at issue, the scope of reissue claim 3 is broader than the scope of any claim of the original patent. Reissue claim 3 recites "an exchange of click-through traffic" either "with a trial process or" via a direct exchange "without a trial process." *See* J.A. 269–70; 207–08. Thus, reissue claim 3 plainly recites a trial process and a direct sale process without a trial process as optional alternatives. *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199 (Fed. Cir. 2013) ("The disjunctive 'or' plainly designates that a series describes alternatives."). Original claim 3 recites "[a] method according to claim 1," which includes a mandatory trial process, "wherein the intermediary web site enables interested exchange partners to conduct a direct exchange of click-through traffic without a trial process." '950 patent col. 19 ll. 7–10. The scope of reissue claim 3 is broader than the scope of original claim 3 because while original claim 3 recites having both a trial process and a direct sale process, reissue claim 3 recites having either a trial process or a direct sale process without a trial process. Similarly, the scope of reissue claim 3 is broader than the scope of original claim 1, because whereas original claim 1 requires a trial process, reissue claim 3 makes the trial process optional. Thus, reissue claim 3 "contains within its scope [at least one] conceivable . . . process which would not have infringed the original patent" claims and is broader than the original patent claims. *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987). Because the reissue application filed more than two years after the grant of the original patent

broadens the scope of the original patent claims, the reissue application is statutorily barred.  35 U.S.C. § 251(d).

### III. CONCLUSION

Because the Board had multiple independent bases for its rejection of reissue claim 3 and we affirm with respect to the broadening reissue rejection, we need not reach Appellants' challenge to the obviousness rejection.  We have considered Appellants' remaining arguments and find them unpersuasive.  For the above reasons, we affirm.

**AFFIRMED**