John C. MAY, Plaintiff,

v.

CARRIAGE, INC., Defendant.

Civ. No. S 84–108.

United States District Court,
N.D. Indiana,
South Bend Division.

May 31, 1988.

On Motion to Alter or Amend
July 11, 1988.

Malcolm A. Litman, Mark E. Brown, Kansas City, Mo., John Marnocha, South Bend, Ind., Gerald M. Kraai, Kansas City, Mo., for plaintiff.

James D. Hall, Thomas J. Dodd, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff, John C. May, filed this case on February 24, 1984, alleging patent infringement by defendant Carriage. An answer was filed by defendant, which included a counterclaim for a declaratory judgment of invalidity and noninfringement. Several non-patent claims and counterclaims which were formerly part of this case have since been tentatively resolved by agreement of both parties. This court ordered the bifurcation of this matter to separate the issues of liability and damages. On August 10, 1984, the proceeding was stayed pending notification to this court of the outcome of reissue proceedings of the patent-in-issue. The stay was lifted six months later. Both sides have since moved the court for summary judgment. Oral argument was heard in open court on March 31, 1988 on the cross-motions for summary judgment. Those motions have now been fully briefed and the case file is replete with pleadings, depositions, affidavits and other exhibits to support said motions.

Jurisdiction is conferred on this court by Title 28 U.S.C. § 1338 which grants original jurisdiction to district courts of "any civil action arising under any Act of Congress relating to patents...."

## I.

### *Facts*

The facts are not in dispute. United States Patent 4,128,269 (hereinafter "Stewart patent"), was issued to inventor Bonner Stewart post-mortem for a "Telescoping Room for Travel Trailers" (hereinafter "slide-out room") on December 5, 1978. It was subsequently assigned to Stewart's widow who then sold it, in early 1983, to plaintiff. Since acquiring the Stewart patent, plaintiff has commercially exploited its subject matter. Prior to said purchase, since about 1977, May had been involved in the manufacture of slide-out rooms. The Stewart patent describes a room which is built into the side of travel trailers and which can be made to slide out when the trailer is stationary for the purpose of obtaining more living space. The room slides back into the trailer for travel. A composite sketch is set forth and incorporated herein as Appendix "A". The slide-out room is not a novel idea. Such rooms have been patented since at least 1925, when United States Patent 1,521,635 (hereinafter "Lewis patent") was issued to Samuel Lewis. The Stewart patent purports to overcome certain disadvantages of previously patented slide-out rooms. Those disadvantages apparently included the necessity of complex mechanisms for moving and supporting the room and having to extensively modify the trailer itself in order to install a room. Also, there were excessive costs associated with those drawbacks.

Defendant Carriage, Inc. of Millersburg, Indiana, is a manufacturer of recreational vehicles. Defendant independently devel-

oped a slide-out room which it has never patented, which was first made available for sale in 1981. In 1982, plaintiff notified defendant of the May slide-out room. In 1983, plaintiff notified defendant of its recent purchase of the Stewart patent and accused defendant of infringement of that patent. On February 24, 1984, plaintiff filed suit for patent infringement. After some discovery had taken place, plaintiff filed for a reissue patent and this lawsuit was stayed pending reissue proceedings by the United States Patent and Trademark Office (hereinafter "PTO"). The reissue was eventually granted as Reissue 32,262 (hereinafter "Stewart reissue") and the stay was lifted on these proceedings.

The plaintiff alleges literal infringement, or, in the alternative, infringement under the doctrine of equivalents, of the Stewart reissue Claims 27, 28, 32, 34, 35, 39, 42, 46, 48, 49, 50, 51, 53, 62 and 64. The parties agreed at the March 31, 1988, hearing that basically, the only elements of these claims which are in dispute are those listed below:

1. The inner fixed margin portion of the floor of the slide-out room. Plaintiff's is "angled downward" at a 45° angle. Defendant's is a straight, 90° vertical edge. Plaintiff contends that a 90° edge is "angled downward" just as a 45° edge is "angled downward."

2. The second support means between the trailer floor and the floor of the slide-out room. Plaintiff uses a "support member" or wooden block to support the slide-out room floor on the trailer during reciprocation of the room section. Defendant's slide-out room is separated from the trailer floor by carpeting only. The underside of the slide-out room floor is aluminum sheeting which slides readily over the carpet. Plaintiff alleges that defendant's second support means is the carpet/aluminum sheeting combination which performs the same function as plaintiff's second support means.

3. The spacing between the trailer floor and the slide-out room floor. Plain-

tiff's slide-out room floor does not touch the trailer floor; the support block separates the two floors. Defendant's slide-out room floor rests on the carpet of the trailer floor. Plaintiff alleges that defendant's slide-out room floor is not in contact with its trailer floor either; carpet and aluminum sheeting separate the floors just as a block separates plaintiff's floors.

Defendant's counterclaim alleges that plaintiff's patent is invalid, thereby precluding infringement. Defendant, in the alternative, denies infringement if the patent is indeed valid. The charge of invalidity is based on Title 35 of the United States Code, sections 102, 103, 112, and 251 as follows:

1. Under sections 102 and 103, defendant contends that plaintiff's patent is invalid for obviousness and lack of novelty. Defendant claims that prior art, both that which the patent examiner considered and that which was not considered, precluded the Stewart reissue under these sections.

2. Defendant alleges that the Stewart patent is invalid under section 251 which prohibits any new matter from being introduced into an application for reissue. That section also prohibits broadening the scope of claims if reissue is applied for more than two years after the grant of the original patent. Defendant claims that plaintiff has violated both provisions by adding new matter *and* broadening the claims. For example, defendant claims that dropping the word "closely" before the word "adjacent", plaintiff has broadened the claims which represent the distance between the trailer floor and the slide-out room floor.

3. Defendant finally alleges invalidity under section 112 which requires that the specification contain a written description of the invention and conclude with one or more claims particularly pointing out the subject matter which the applicant regards as his

invention. The specification must therefore support the claim. Defendant contends that certain parts of plaintiff's claims are not supported by the specification. Two phrases in particular must be considered as they affect all the disputed claims. Those are (1) "closely adjacent" and (2) "second support means supporting the slide-out room floor *on* the trailer floor" (emphasis added).

A sketch of the slide-out mechanisms which are at the heart of this dispute is incorporated herein and marked as Appendix "B".

It can be seen from these drawings that plaintiff's inner fixed margin portion is tapered at a 45° angle, while defendant's is a straight edge. It is also evident that plaintiff's slide-out room floor is separated from its trailer floor by the support block. Defendant's slide-out room floor slides right over the trailer floor carpet. Apart from these differences, the mechanisms work in the same manner, both having a first support means comprised of a tubular guide member which connects the trailer to the slide-out room, said tubular guide member secured at one end to the underside of the trailer, with an elongated beam extending slidably through this tubular guide member which is rigidly attached at the opposite end to the outer wall of the slide-out room. The slide-out room is moved by a reciprocative drive mechanism which can be operated hydraulically or by an electric motor.

Defendant contends that the following patents represent prior art which the examiner either considered and wrongly decided did not preclude the Stewart patent, or didn't consider at all. Defendant chose to cite only these references because, as it stated in its "Memorandum in Support of its Supplemental Motion for Summary Judgment" at page 23, "... it is believed that the minuteness or non-existence of actual patent validity can be appreciated by the Court with a citation of but a few selected references," because "it is not the Defendant's intention in the course of this motion for summary judgment to pursue all the multiple applications of prior art it

has available...." The prior art cited by defendant is as follows:

1. United States Patent 4,049,310 (hereinafter "Yoder" patent)
2. United States Patent 3,572,809 (hereinafter "Buland" patent)
3. United States Patent 2,744,781 (hereinafter "Black" patent)

The Yoder patent was filed on December 22, 1975. It was originally considered by the examiner in the course of the reissue examination but was removed from consideration after plaintiff filed an affidavit showing that the Stewart invention was conceived before the Yoder filing date and reduced to practice shortly thereafter. There is strong evidence, however, which has not been disputed by plaintiff, that the Yoder trailer was on sale in the United States as of October 20, 1975, more than one year prior to the Stewart filing date of January 21, 1977. Therefore, under 35 U.S.C. § 102(b), Yoder is prior art which should have been considered. Plaintiff points out that Yoder was indeed considered before it was withdrawn and that the examiner found that Claims 12 and 16 of the application for reissue (Claims 27 and 35, respectively, in the reissue) were allowable over the Yoder patent.

The Yoder patent describes a travel trailer with a slide-out room with means to easily guide the room in and out of the trailer with minimum physical exertion. The room in the Yoder invention is designed to be used as a dining area with a table and booths. The slide-out room is guided in and out of the trailer by a pair of rigid elongated members attached underneath the trailer and secured to the outer wall of the slide-out room. The Yoder slide-out room floor is separated from the trailer floor by rollers which ease extension and retraction. A sketch of the Yoder slide-out room mechanism is attached hereto and marked Appendix "C".

The Buland patent, which was issued on March 30, 1971, was considered by the PTO in the course of the reissue examination. The patent is for a travel trailer with laterally extensible side portions which collapse into the trailer for travel. The slide-out

rooms in the Buland patent are extended and retracted by means of a telescoping section made up of a stationary portion and a threaded extendable portion. The patent suggests a simple bell crank device or power driven drill to move the telescoping mechanism. The patent proposes that the mechanism could be moved by many other means, also. A wheel is secured to the underside of the slide-out room floor at its inner edge. This wheel enables the easy movement inwardly and outwardly of the slide-out room. It separates the trailer floor from the slide-out room floor.

The Black patent, issued May 8, 1956, describes slide-out rooms for trucks and transport trailers. The slide-out room needs no external support and its floor, when the room is extended, lies flush with the trailer floor. This is accomplished by means of a hinged slide-out room floor which occupies a compact vertical position when the slide-out room is retracted. This floor is swung downward to lie flush with the trailer floor when the room is extended. The slide-out mechanism of Black consists of screw-driven rods connected by nut assemblies which are also connected to the extend-able room. A crank is used to move the screw rods which in turn cause the room to move inward and outward. See Appendix "D". Other patents considered by the examiner include (1) the Lewis patent which describes a slide-out room with parallel beams attached under its floor and rollers on the top of the trailer floor for guiding and supporting the slide-out room, and (2) the Rice patent which also utilizes rollers for support and guiding plus vertical bars mounted on the outer wall of the slide-out room and engageable with the ground for support of the room when extended, and further having a means by which the room descends as it is extended so that the slide-out room floor is flush with the trailer floor at full extended position.

## II.

### A. Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord, Arkwright–Boston Mfg. Mutual Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984).

Recently the Supreme Court of the United States took the opportunity to address Rule 56 of the Federal Rules of Civil Procedure. In two cases decided on the same day, the Court has expanded the scope of the application of Rule 56. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

After *Celotex* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. *Celotex*, 106 S.Ct. at 2554. See also *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir. 1987). The initial burden is on the moving party to demonstrate " 'with or without affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Id.* 106 S.Ct. at 2553; *Arkwright–Boston, supra* at 593. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.; Arkwright–Boston, supra* at 593. Further, in *Anderson*, the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. *Anderson*, 106 S.Ct. at 2510. In addition, the Court went on to interpret Rule 56 as requiring that the courts analyze summary judgment mo-

tions utilizing the standard of proof relevant to that case or issue. *Id.* at 2512–2513. For recent academic insight into *Celotex* and *Anderson*, see Childress, *A New Era For Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183–194 (1987). At page 194 thereof, the author states:

"The recent Supreme Court cases likely require that summary judgment be more readily granted.... [T]his emerging trend signals a new era for summary judgments, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record."

For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Mansville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987). A recent object lesson applying these ideas is found in *Richardson v. Penfold*, 839 F.2d 392 (7th Cir.1988).

The Federal Circuit has found that summary judgment is entirely appropriate in patent cases when no genuine issue of material fact remains for decision. *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1036 (Fed.Cir.1987). In a summary judgment motion to invalidate an existing patent, the burden on the moving party is heavy. The issued patent carries a statutory presumption of validity under 35 U.S.C. § 282 which must be overcome by clear and convincing evidence. *Id.*

Many patent cases are virtually impossible to decide on summary judgment due to the need for expert testimony relating to technical or scientific matters beyond the court's expertise. Here, however, the disputed claims are not technical or subject to special meanings that would require such expert testimony. *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643 (Fed.Cir. 1987). Where, as here, infringement issues require the court to interpret claim language, the court must be careful to distinguish underlying fact issues by first considering extrinsic evidence such as the specification, the prosecution history, and the other claims. *Id.* at 643. Such evidence may show that there are underlying factual issues which preclude summary judgment. *Id.* In the end, claim construction is a question of law. *Id.*

Summary judgment may be proper even if an equitable issue presents itself. Here, the court is asked to consider the equitable doctrine of equivalents. Although equitable issues are fact-oriented, this particular doctrine has been the subject of summary judgment rulings by district courts which have been affirmed by the Federal Circuit. *See Chemical Engineering Corp. v. Essef Industries, Inc.*, 795 F.2d 1565, 1571–72 (Fed.Cir.1986). Under this doctrine, equivalency is judicially determined by reviewing the contents of the patent, the prior art and the accused device and then by essentially re-defining the scope of the claims. *Texas Instruments, Inc. v. U.S. Int'l Trade Commission*, 805 F.2d 1558, 1572 (Fed.Cir.1986).

Finally, issues of invalidity may be determined by summary judgment as long as underlying disputed factual issues are resolved. For example, in *Graham v. John Deere*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966), the Supreme Court of the United States listed the factual inquiries a court must make before deciding the issue of obviousness under Title 35 U.S.C. § 103. These are: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) level of ordinary skill in the art and (4) any objective evidence such as commercial success, long-felt but unsolved needs, and failure of others to obtain the same results. However, "the mere incantation of the fact findings listed in *Graham v. John Deere* cannot establish the impropriety of issuing a summary judgment when there is no material issue of fact requiring a trial." *Chore–Time Equipment, Inc. v. Cumberland*, 713 F.2d 774, 778–779 (Fed.Cir.1983).

*B. Invalidity*

■ Defendant's motion for summary judgment on its counterclaim of invalidity will be considered initially. If the patent is indeed invalid, it obviously cannot be in-

fringed. Plaintiff contends that because it has only alleged infringement of certain claims, defendant may only assert invalidity of the claims-in-issue. This is incorrect. There is no question that a defendant may raise the issue of validity by a counterclaim in an infringement suit. *Altvater v. Freeman*, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943); Wright & Miller, *Federal Practice and Procedure:* Civil § 1406. Further, defendant is entitled to a declaration of validity on any or all claims of plaintiff's patent. *Application of Clark*, 522 F.2d 623, 635 (CCPA 1975); *Kalo Inoculant Co. v. Funk Bros. Seed Co.*, 161 F.2d 981, 991 (7th Cir.1947) *rev'd on other grounds*, 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588 (1948). This is because "defendant has a right to know whether what it is doing violates any valid claim of plaintiff's patent." *Kalo*, 161 F.2d at 991.

Defendant claims that the following claims of the Stewart reissue are invalid: 7, 12, 13, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 40, 41, 44, 45, 47, 49, 51, 61, 64, 65, and 66. The charges of invalidity are based on Title 35 U.S.C. §§ 102, 103, 112 and 251. These will each be discussed separately.

▮ Section 251, which deals with the reissue of defective patents, reads as follows:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application for the unexpired part of the term of the original patent. *No new matter shall be introduced into the application for reissue.*

The Commissioner may issue several reissued patents for distinct and separate parts of the thing patented, upon demand of the applicant, and upon payment of the required fee for a reissue for each of such reissued patents.

The provisions of this title relating to applications for patent shall be applicable to applications for reissue of a patent, except that application for reissue may be made and sworn to by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent.

*No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.* (emphasis added)

Defendant believes that the reissue claims add new matter and enlarge the scope of the claims in violation of § 251.[1] Defendant first points to the deletion of the word "closely" from Claims 7(a) and 47(a) and contends that such deletion broadens the scope of these claims. It is defendant's contention that the term "closely adjacent" means that the floor of the room section and the floor of the trailer must be slightly spaced apart. By dropping "closely," it is possible to interpret "adjacent" as meaning *either* "closely spaced" *or* "in contact."[2] Therefore, defendant contends, the scope of the claim has been broadened. Defendant also points out that, although "closely" was deleted from 7(a) and 47(a), it was left in 27 and 35. Therefore, states defendant, plaintiff must have intended some difference in meaning between "adjacent" as used in Claims 7 and 47, and "closely adjacent" as used in Claims 27 and 35.

---

1. The reissue application was submitted almost six years after the grant of the original patent. Therefore, the claims may not be enlarged in scope under this section.

2. "Adjacent" is defined as "lying near, close, or contiguous; adjoining; neighboring," by the *American College Dictionary* (1970 ed.) and as "close to; next to; lying near; adjoining," by *The American Heritage Dictionary of the English Language* (1970 ed.) and as "near or close ... adjacent things may or may not be in actual contact with each other, but they are not separated by things of the same kind ..." by *Webster's New World Dictionary* (1976, 2d ed.).

This court cannot agree with defendant. In the first place, the patent examiner was presumably aware of the deletion and accepted it. Title 35 U.S.C. § 282 states that a patent shall be presumed valid. This court must defer to the PTO decision because deference is "due to a qualified government agency presumed to have properly done its job...." *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed.Cir.1984), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Secondly, the mere deletion of a word or phrase from a claim does not necessarily broaden it. *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 (Fed. Cir.1987). The underlying factual issues which must be considered before the claim is interpreted as a matter of law include the specification description, the prosecution history and the meanings of the claim terms in the relevant history. *Id.* at 1037. However, no fact issue arises if the disputed term in a claim is not a technical term or term of art with a special meaning to those skilled in the art or if the term is clearly defined in the patent specification. *Howes*, 814 F.2d at 643. "Closely" and "adjacent" are common words and no one has suggested that they possess a special meaning in the trailer business. Furthermore, the specification makes it very clear that the two floors do not touch.[3] Because adjacent can mean either "close" or "touching," it would ordinarily seem that "closely adjacent" might have a more narrow meaning than simply "adjacent." However, referring to the specification, it is clear that the meaning of "adjacent" here is "close, but not touching."

The defendant also contends that plaintiff broadened the scope of the claims in violation of § 251 by 27(d) which claims "adjustment means interconnecting the room section and the travel trailer for adjusting the amount of travel of the room section."[4] According to defendant, in the original Stewart patent, the claims referred to the adjustment means as interconnecting a piston-cylinder unit and the travel trailer, not interconnecting a room section and the travel trailer as is now claimed by the added phrase in the reissue. Again, deferring to the PTO's decision, as this court must, it can hardly be said that the PTO's allowance of this phrase was clearly erroneous. The test for determining whether a reissue claim is broader in scope than the original is to determine whether the reissue claim contains within its scope any conceivable apparatus or process which would not have infringed the original patent. *Tillotson*, 831 F.2d at 1037. As a comparison of the original claims 4 and 7 with the reissue Claim 27 indicates, the language "adjustment means interconnecting the room section and the travel trailer" would infringe the original language "adjustment means interconnecting the piston-cylinder unit and the travel trailer for adjusting the amount of travel of the room section upon actuation of the piston-cylinder unit." The new language merely attempts to clarify. It does not expand the scope of the original claims. The Stewart reissue is therefore not invalid under section 251.

Defendant next contends that certain parts of the patent are invalid under section 112. That section states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

---

3. The specification describes the position of the two floors as follows:

> The block is relatively thin so that the space between the trailer floor and the lower deck of the floor of the room section is minimal, for example, about one-half inch.

4. This phrase is also used in Claims 49, 64, and 66 and is further described in Claims 28–33.

A claim may be written in independent or, if the nature of the case admits, in dependent or multiple dependent form.

Subject to the following paragraph, a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers.

A claim in multiple dependent form shall contain a reference, in the alternative only, to more than one claim previously set forth and then specify a further limitation of the subject matter claimed. A multiple dependent claim shall not serve as a basis for any other multiple dependent claim. A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. (emphasis added)

Defendant's invalidity claim is based on its contention that the Stewart reissue violates the section 112 requirement that the specification supports the claims. The test is whether the specification would have reasonably conveyed to one of ordinary skill that the inventor invented the later-claimed subject matter. *In re Kaslow,* 707 F.2d 1366, 1375 (Fed.Cir.1983). Defendant's argument that the original specification doesn't support certain claims is based on the following items:

(a) The word "adjacent" rather than the phrase "closely adjacent" in Claims 7 and 47.

(b) The second support means in Claims 7, 27, 35 and 47.

(c) The guide member cantilevering from the frame member in Claims 7 and 42.

(d) The adjustment means connecting the slide-out room and travel trailer in Claims 27, 28, 49, and 64.

(e) The "reciprocative drive means" in Claim 13.

This court has already rejected defendant's "closely adjacent" argument. The original specification supports the claim that the two floors are adjacent.

■ Defendant contends that the phrase "second support means between the trailer floor and overlying room extension for supporting the latter *on* the trailer floor during reciprocation of the room section" (emphasis added), which is found in Claims 7, 27, 35, and 47, finds no support in the original specification which requires the room extension floor to be supported some distance above the trailer floor. The word "on", defendant claims, can only mean "in contact with." However, the dictionary definition of "on" is much broader. It includes: "support, suspension, dependence, or reliance: 'on wheels' " [5] and "so as to be supported by [to lean *on* one's elbow]." [6] Defendant cannot seriously believe that a person skilled in the art would fail to understand these claims in conjunction with the original specification and drawings to mean that the two floors are not in contact but that the slide-out room floor is supported "on" or "above" the trailer floor by means of the support block.

■ Next, defendant contends that claims 7(d) and 42(d), which describe a guide member mounted beneath the trailer floor and cantilevering from a frame member attached to the trailer, are invalid because the specification supports no such claim language. A "cantilever" is defined as "a projecting beam or other structure supported only at one end." [7] Defendant points to the fact that the guide member is supported at *both* ends. Therefore, the guide member is *not* cantilevered and therefore, the claim language finds no sup-

---

**5.** *The American College Dictionary* (1970).

**6.** *Webster's New World Dictionary,* (1976 2d ed.)

**7.** *The American Heritage Dictionary of the English Language* (1970).

port in the specification or drawings. This court disagrees with that conclusion. The dictionary's definition of cantilever also includes the simple meaning "to extend outward...."[8] Perhaps the author of the claim language was less than careful in choosing the word "cantilevered", but this court believes that it was meant to be used in its commonest sense to mean "extend outward." That is more than evident in light of the specification and drawings. Again, this court presumes that the examiner's acceptance of that term was justified.

Defendant's next contention of invalidity under section 112 is based on the phrase "adjustment means interconnecting the room section and travel trailer" in Claim 27 and referred to in Claims 28, 49 and 64.

The arguments presented by both plaintiff and defendant were confusing at best. It is apparent that there are two different adjustments which can be made. First, the location of the piston-cylinder itself can be adjusted by manipulation of nuts fitted onto a threaded rod on either side of the trailer frame beam. A sketch of the piston-cylinder unit is incorporated herein and marked Appendix "E". The specification describes this adjustment process as follows:

In the preferred embodiment illustrated, the room section is moved by reciprocative drive mechanism such as a double acting fluid pressure piston-cylinder unit 74 located between the pair of support and guide units 56. The inner end of the cylinder 76 is attached to the trailer frame beam 60 which is the one farther from the opening 12. It is attached by a threaded coupling rod 78 fitted with nuts 80 on each side of the beam, allowing longitudinal adjustment of the cylinder relative to the transversal dimension of the trailer.

The other end of the cylinder is supported on a saddle block 82 which is attached to the opposite frame beam 60. This end of the cylinder is not fixed rigidly to the frame, thereby allowing its longitudinal movement upon adjustment of nut 80.

The piston rod 84 of the unit 74 has a threaded terminal portion which fits into a threaded block 86 rigidly attached to beam 66. A lock nut 88 locks the rod to block 86. Thus, actuation of the piston-cylinder unit 74 causes movement of the room section between its retracted and extended positions. Fluid lines 90 and 92 supply pressurized fluid preferably hydraulic, selectively to opposite ends of the piston-cylinder unit, by a conventional control valve (not shown), to effect retraction and extension of the room section.

Before operation of the telescoping room, the location of the piston-cylinder unit 74 and the travel of its ram are adjusted by manipulation of nuts 80 and threaded portion of piston rod 84, respectively so that the room section moves fully to its retracted and exended positions upon retraction and extension, respectively, of unit 74. Once this adjustment is made it does not have to be reset under normal conditions.

The second type of adjustment which can be made is the adjustment described in reissue Claim 27(d):

(d) adjustment means interconnecting the room section and the travel trailer for adjusting the amount of travel of the room section.

This obviously refers to the piston-cylinder unit which can be moved inwardly and outwardly as far as desired. This is for the adjustment of the amount of travel of the room section, not adjustment of the piston-cylinder unit itself, which is generally a one-time adjustment made *before* the slide-out room is ever extended.

Claim 27(d) is acceptable under section 112, paragraph six, which permits an element in a claim for a combination to be expressed as a means for performing a specified function without the recital of structure, material, or acts in support thereof. That claim must be construed to cover the corresponding structure described in the specification. The "means"

8. *Id.*

is the "adjustment means" which performs the "specified function" of adjusting the amount of travel of the room section. That claim must therefore be construed to cover the "corresponding structure described in the specification," the piston-cylinder unit as described in dependant Claims 28–34, which is connected at one end to the trailer and at the other end to the outer wall of the slide-out room.

Defendant's final argument under section 112 can be disposed of quickly. It argues that the words "the reciprocative drive means" are utilized for the first time in Claim 13, contending that these words find no antecedent basis in the preceding Claims 12 and 7 from which Claim 13 depends. The specification uses the words "reciprocative drive mechanisms." It is hard to imagine how those words do not disclose the words used in Claim 13. Once again, this court should point out that section 112, paragraph six, expressly authorizes the means-plus-function format of Claim 13.

In addition to all its claims of invalidity under sections 251 and 112, defendant also maintains that certain of the Stewart reissue claims are invalid under sections 102 and 103, which require novelty and lack of obviousness for patentability. The relevant paragraphs of these sections are set forth below:

§ 102 "A person shall be entitled to a patent unless ... (b) the invention was patented or described in a printed publication in this or in a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States;

§ 103 "patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art to which said subject matter pertains."

As pointed out previously, a defendant who is accused of patent infringement may counterclaim for declaratory judgment on the validity of plaintiff's entire patent and such counterclaim need not be limited to the claims-in-issue. *Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943). Plaintiff maintains that this court may only consider the validity of the claims plaintiff has put in issue. Obviously, in light of *Altvater,* this is not the case. This court will consider the validity of all the claims brought into issue by the defendant. Section 102 will first be considered.

■ Defendant contends that Claims 7 and 47 are anticipated under section 102 in view of the Yoder patent and that Claim 27 is anticipated in view of the Buland patent alone or in combination with Yoder. Section 102 anticipation is strictly construed; to anticipate under this section, the prior art must meet every element of the claimed invention. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1379 (Fed. Cir.1986) *cert. denied,* —— U.S. ——, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987); *Orthokinetics, Inc. v. Safety Travel,* 806 F.2d 1565, 1574 (Fed.Cir.1986). Anticipation occurs only when some single prior patent contains within its four corners every element of the claim in question; a patent is not anticipated when its elements are distributed among several prior publications or devices. *Paeco, Inc. v. Applied Moldings, Inc.,* 562 F.2d 870, 875 (3d Cir.1977). Therefore, defendant's attempt to claim section 102 anticipation of Claim 27 in view of Buland in combination with Yoder is impermissible. When there are differences between the reference disclosure and the claim, rejection must be based on section 103 which takes differences into account. *Titanium Metals Corp. of America v. Banner,* 778 F.2d 775, 780 (Fed.Cir.1985). Anticipation under section 102 is a factual determination. *Akzo N.V. v. U.S. Int'l Trade Commission,* 808 F.2d 1471, 1479 (Fed.Cir.1986) *cert. denied,* —— U.S. ——, 107 S.Ct. 2490, 96 L.Ed.2d 382 (1987). Once again it must be stressed that the Stewart reissue enjoys a presumption of validity under 35 U.S.C. § 282. Defendant claims that the presumption is weakened if the court finds that there exists prior art which should have been considered but was

not. The Federal Circuit has held that the existence of uncited prior art does *not* weaken the presumption but merely makes it easier for the party challenging validity to carry its burden of proof. *Alco Standard Corp. v. Tennessee Valley Authority*, 808 F.2d 1490, 1497 (Fed.Cir.1986) *cert. dismissed* —— U.S. ——, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The record here clearly discloses that the Yoder device was "on sale" in this country more than one year prior to Stewart's initial filing date. In addition, plaintiff has not disputed that fact. Therefore, Yoder should have been considered by the examiner in determining patentability under section 102(b). Indeed, Yoder was originally considered before it was pulled from consideration following plaintiff's filing an affidavit which stated that the Stewart invention was conceived before the Yoder filing date. Plaintiff apparently did so in good faith and defendant obviously agrees with that conclusion, as it has declined to charge plaintiff with fraud. Because the patent examiner's final determination did not include consideration of the Yoder patent, as this court finds that it should have, this court will examine Yoder and the examiner's findings before Yoder was withdrawn to determine whether the Stewart reissue was anticipated by Yoder.

Claims 7, 27 and 47, elements (a), (b), and (c) are all basically the same. Only element (d) of each of these independent claims contains what the examiner viewed as the novel elements. Elements (a), (b) and (c) alone were rejected as an obvious combination in view of Yoder. This court finds that said combination was not anticipated by Yoder or Buland under section 102 because the two references differ somewhat from the Stewart patent. For example, the second support means in Stewart is described in dependant Claim 21 as "a support member secured to the trailer floor adjacent to the opening in the wall thereof pliably supporting the underside of the room section floor for reciprocation of the room section between retracted and extended positions," while in Yoder the comparable support and glide means consists of "a plurality of rollers supporting the floor of said extension unit at a plurali-

ty of points spaced laterally and longitudinally of the vehicle to accomodate movement between cantilevered extended position and retracted position ...", and in Buland, the comparable support and glide means consists of "wheel members rotatably mounted on the inner ends of the top and base to respectively contact the ceiling and floor of the mobile home to partially support said housing." Noting once again that the Federal Circuit, in *Titanium* stressed that anticipation can be found only when a reference discloses *exactly* what is claimed, this court rejects defendant's anticipation claim. Still open for consideration, however, is defendant's contention of obviousness under section 103 which *Titanium* teaches is the relevant statute when there are differences between the reference disclosure and the claim.

Obviousness is a question of law which may only be decided after certain factual issues are resolved as set forth in *Graham v. John Deere*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966):

1. The scope and context of the prior art;
2. The differences between the prior art and the claims at issue;
3. The level of ordinary skill in the art.

*Custom Accessories, Inc. v. Jeffrey–Allan Industries, Inc.*, 807 F.2d 955, 958 (Fed.Cir. 1986). In addition, the court must consider objective evidence of nonobviousness such as commercial success, long-felt but unresolved needs, failure of others, etc. *Graham*, 383 U.S. at 17, 86 S.Ct. at 693. However, where no substantial disputes of fact are presented and the clarity of patent documents is such that the court can determine from mere comparison of descriptions contained therein whether devices at issue are substantially identical, section 103 issues of obviousness may be treated as questions of pure construction. *Robert v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1333 (7th Cir.1983). This court has carefully considered all the evidence in this case and is firmly convinced that summary judgment is proper due to the fact that the patent documents are clear and easily understood and there appear to be no sub-

stantial disputes of fact. Nevertheless, each of the *Graham* factual issues will be considered carefully before this court rules on the obviousness issue. The level of skill required and any secondary considerations will be discussed first and then the scope and content of the prior art will be examined in light of the claims defendant has put in issue.

There is good evidence that the level of skill required to develop the slide-out room mechanisms is not very high. Granted, a good knowledge of mechanics is necessary but a college degree is not. Clarence Yoder, who helped develop defendant's trailer with slide-out room has only an eighth grade education. Stephen C. Moss, the Chief Design Engineer for Carriage, Inc., who also helped develop defendant's slide-out room, is a high school graduate. John C. May, who developed a slide-out room himself (not the patent in issue), is a high school graduate. The level of skill in the art is probably not low enough to be that of a layman, but it certainly does not rise to the level of a highly-educated engineer. The educational background of inventors in the art is merely one factor in determining the level of ordinary skill in the art and is by no means conclusive. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450 (Fed.Cir.1986) *cert. denied*, —— U.S. ——, 108 S.Ct. 85, 98 L.Ed. 2d 47 (1987). Other factors which may be considered are the type of problems encountered in the art, prior art solutions, rapidity of innovation, sophistication of technology, and educational level of active workers in the field. *Id.* at 449–450. The issue of obviousness is, therefore, resolved not by reference to the actual inventor's knowledge and skill, but rather by reference to the hypothetical person of ordinary skill who is presumed to be aware of the pertinent art. Here, in view of the many patents relating to slide-out rooms, the number of improvements which have been made in their design, the relative lack of sophistication of the technology which is based in great part on general mechanical and engineering knowledge, and the educational level of active workers in the field which appears, from the sampling of depo-

sitions before the court, to be generally no higher than high school level, this court concludes that the level of skill in the art necessary to develop the slide-out mechanism which is at issue is not very high, thereby enforcing a determination of obviousness.

Secondary considerations, when present, must be considered. *Bausch & Lomb,* 796 F.2d at 450. These considerations include evidence of commercial success, long-felt but unresolved needs, and failed attempts. *Id.; Graham v. John Deere,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Although the parties have submitted some evidence of commercial success, it is hardly conclusive. There has been no evidence presented that shows that the Stewart slide-out room as commercially exploited by May, Inc., has cornered the market, or indeed, created increased demand for the slide-out room. Although it perhaps has been a successful venture for May, Inc., that is not enough to negate a possible finding of obviousness.

Although the Stewart patent may have improved on some aspects of the slide-out room for travel trailers, there is no evidence of "long-felt need" or failure of others in attempts to develop needed improvements. This court does not believe that secondary considerations in this case negate a possible finding of obviousness.

Finally, the prior art must be painstakingly examined to determine its scope and content and then to compare it to the claims at issue. This court does not have before it in evidence several of the patents which the examiner deemed to be very relevant prior art, in particular, the Meaker and Pezzaglia patents, which were cited several times by the examiner in his initial rejections of the Stewart reissue application. Yet this court believes it can determine obviousness based entirely on the patents which are before it in evidence, namely, Yoder, Lewis, Buland, Black, and Rice. Any other prior art cited by the examiner could only serve to enforce a determination of obviousness. Each of the Stewart reissue independent claims which defendant has put in issue, will be considered in turn.

■ Claim 7 is made up of four elements. There is no question that the first three elements are not novel. These were rejected in combination several times by the examiner in view of the prior art, especially Yoder. The examiner accepted claim 7 when the last eight words were added to element (d), which reads:

(d) a frame member attached to said trailer and said guide member, said frame member mounting said guide member beneath said trailer floor with *said guide member cantilevering from said frame member.* (emphasis added)

The description of the guide member "cantilevering" from the frame member finds correlation in the tubular support member of Yoder, which extends forwardly from a frame member and terminates in an end edge. See Yoder drawing, Appendix C. Neither the Stewart nor the Yoder tubular guide members are actually "cantilevered", but both are fully supported on both ends and both extend outward. This court fails to see any substantial difference between the two devices. Claim 7 is therefore obvious under section 103. Claims 12, 22, 23, 24, 25, and 26, which all depend on Claim 7, must also be deemed obvious, since all refer to the frame member/guide member element of Claim 7.

■ Claim 27, which has essentially the same first three elements as Claim 7, was accepted by the examiner based on element (d) set forth below:

(d) adjustment means interconnecting the room section and the travel trailer for adjusting the amount of travel of the room section.

As discussed previously, this "adjustment means" refers to the piston-cylinder rod which adjusts the amount of travel of the room section. The Buland patent includes a first support means, a threaded rod, which serves to assist in supporting the room section as it travels. There is also a second support means, namely wheels, which are between the trailer floor and the slide-out room floor. Rotation of the screw rod serves to position and adjust the amount of travel of the room section, depending on the number of turns taken.

That screw rod interconnects the room section and the travel trailer. A drawing of the Buland slide-out rooms is incorporated herein and marked Appendix "F". In addition, there is a nut means in the Buland patent which is threadably received on the rod and which serves for adjusting the position of the rod relative to the trailer. There is also a frame member (number 16 in Appendix F) through which the rod extends. Finally, the rod is secured to the room section adjacent the outer end wall and below the floor of the slide-out room. In the Black patent, too, are screw-driven rods connected into nut assemblies which are connected to the slide-out room. This adjustment means could be incorporated into the Yoder trailer to accomodate adjustable movement of the Yoder room. Plaintiff contends that the examiner considered Yoder and Buland in accepting Claim 12, predecessor to Claim 27 before Yoder was withdrawn from consideration and, therefore, this court must adopt the PTO's finding unless it was clearly erroneous. This court can come to no other conclusion, but that the examiner's decision in allowing Claim 27 was indeed clearly erroneous. This court can see nothing novel about Stewart Claim 27 in view of Buland. Dependent Claims 28, 29, 30, 31 and 32 are also obvious.

■ Claim 47 recites the three elements (a), (b) and (c), which in combination were rejected. Element (d) is set forth below:

(d) a frame member comprising a hanger attached to said trailer and said guide member, said frame member mounting said guide member beneath said trailer floor and suspending said guide member adjacent said one trailer wall.

Yoder apparently was not considered by the examiner with respect to this claim. The Yoder trailer construction includes a hanger for supporting a guide member which is also attached to a second frame member. (See Appendix C, in which number 83 is the hanger, number 82 is the guide member, and number 81 is the other frame member which supports the guide member.) Again, this claim must be con-

sidered obvious. Dependent Claim 65 must also be obvious.

■ Finally, defendant contends that Claim 35 and depending claims 36, 37, 38, 39, 40, 41, 44, 45 and 64 are invalid. Claim 35 recites the same first three elements as 7, 27 and 47. Element (d) reads as follows:

(d) said frame having a structural frame member positioned beneath said trailer floor and having an opening, said tubular guide member being attached to said frame member and extending through said opening thereof.

Claim 35 was also apparently considered and accepted by the examiner in view of Yoder as original Claim 16 before Yoder was withdrawn from reference. Defendant contends that this claim is invalid as obvious in view of Buland in combination with Yoder. In Buland, the threaded reciprocative member is shown extending through frame member 16. *See* Appendix "F". Defendant asserts that if one wanted to extend the guide member through the frame member, one could do so and such a structural modification would be of no patentable significance. Defendant points out that vehicular frame members through which rods, tubes, wiring and cables extend have long been used in the manufacture of automobiles and trucks. This court agrees that Claim 35 is invalid as obvious in view of the prior art. The examiner's allowance of that claim and those which depend from it was clearly erroneous.

Now that this court has considered each of the disputed claims separately, it must finally consider whether the patent as a whole was obvious in view of the prior art. *Bausch & Lomb*, 796 F.2d at 449. This court finds nothing in the Stewart reissue which sets it apart from the prior art. The Stewart reissue is invalid for obviousness.

### C. Infringement

Although an invalid patent obviously cannot be infringed, the court will consider the infringement issues separately, in order to complete the record. Assuming now that the Stewart reissue *is* valid, this court will decide whether the unpatented Carriage trailer construction infringes Stewart reissue Claims 27, 28, 32, 34, 35, 39, 42, 46, 48, 49, 50, 51, 53, 62 and 64.

■ Infringement can occur in one of two ways: either literally or under the doctrine of equivalents. The court can easily dispose of the contention that the Stewart reissue is literally infringed. There is no such literal infringement. The second support and glide means of the Stewart reissue described in all the independent claims is a block of wood which separates the slide-out room floor and the trailer floor. There is no such block incorporated in the Carriage construction. Further, the arguments which have erupted in this case over the inner fixed margin portion, also described in all the Stewart independent claims, are nothing short of ridiculous. The PTO has made clear that the angle of such portion is not of patentable significance. This court agrees.

The doctrine of equivalents presents a strong case for infringement. This doctrine exists for the equitable purpose of preventing an infringer from stealing the benefit of an invention. *Texas Instruments, Inc. v. U.S. Int'l Trade Commission*, 805 F.2d 1558, 1572 (Fed.Cir.1986). Even though not literally infringing the patent, a device may be infringing under this doctrine if it performs substantially the same function in substantially the same way to obtain the same result. *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987) *cert. denied,* —— U.S. ——, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988) and *cert. denied,* —— U.S. ——, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988). That formulation, however, does not mean that a court can ignore claim limitations. *Id.* at 935. Before *Pennwalt*, it was unclear whether, from an analytical viewpoint, the doctrine of equivalents was to be applied on an "element-by-element basis" or to the invention "as a whole." [9] Under *Penn-*

---

**9.** Nieman, *The Federal Circuit Resolves Ambiguities in the Doctrine of Equivalents,* March, 1988, J. Pat. Trademark Off. Soc'y 153, 154.

*walt,* a doctrine of equivalents analysis should proceed as follows:

1. Determine whether the accused device achieves substantially the same result as the claimed invention.

2. Determine whether the accused device performs substantially the same work as the claimed invention.

3. Determine whether the accused device operates in substantially the same manner as the claimed invention. In so doing, compare each element of the claim with the accused device to determine whether the accused device contains each element or its substantial equivalent.[10]

*Pennwalt,* therefore, has adopted the element-by-element analysis. In applying the above steps, this court finds that:

1. Defendant's slide-out room achieves substantially the same result as plaintiff's slide-out room. Both devices provide a telescoping room section for a travel trailer which is extended and retracted by a support mechanism located under the trailer, interconnecting the room section at its outer wall to the trailer section underneath its floor. Both are easily moved inwardly and outwardly by mechanical rather than manual means.

2. Defendant's mechanism obviously performs the same work as plaintiff's mechanism. That is, both mechanisms support and glide the slide-out room and provide an adjustment means for moving the room as far in or out as one wishes.

3. The only disputed part of defendant's device which may or may not infringe plaintiff's device (apart from the inner fixed margin portion which this court has found to be of no patentable significance), is the second support means which, in plaintiff's trailer construction, is a support block which separates the slide-out room floor from the trailer floor and permits easy movement of the slide-out room. Defendant's correspond-

ing structure consists of aluminum sheeting underneath the slide-out room floor which moves easily over carpet affixed to the trailer floor. Defendant claims it has *no* second support means and therefore does not infringe plaintiff's device. Plaintiff contends that defendant's second support means is the combination carpet/aluminum sheeting which performs the same function as plaintiff's support block, i.e., permitting easy slidability of the extension room by reducing friction between the two floors. This court agrees with plaintiff. Under the doctrine of equivalents, defendant infringes plaintiff's Stewart reissue patent.

### III.

#### *Conclusion*

Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff's Motion for Summary Judgment which charged defendant with infringement of Claims 27, 28, 32, 34, 35, 39, 42, 46, 48, 49, 50, 51, 53, 62 and 64 of the Stewart reissue patent is GRANTED. However, that ruling is of little value to plaintiff because this court now GRANTS defendant's Motion for Summary Judgment on Invalidity of independent Claims 7, 27, 35, 47, and all the claims which depend thereupon. Although this decision effectively nullifies the infringement ruling, this court has ruled on both motions in order to form a complete record in the event that the action is appealed.

Defendant's Motion for Summary Judgment for Noninfringement is DENIED. Defendant's Motion for Rule 11 Sanctions including costs and attorney's fees, is DENIED. It should be noted that defendant, in its Trial Brief, filed with this court on August 31, 1987, briefly argued the "doctrine of intervening rights" as a last resort

---

**10.** *Id.* at 159.

in the event this court found infringement. This doctrine, however, was never asserted in the summary judgment proceedings. Consequently, this court declines to consider the doctrine at this time. IT IS SO ORDERED.

APPENDIX A

MAY'S TRAVEL TRAILER WITH SLIDE-OUT ROOM

*Fig. 1.*

1. Side view of trailer

*Fig. 2.*

2. Front view of trailer with room extended

*Fig. 3.*

3. Inside view of trailer with room extended

*Fig. 4.*

4. Inside view of trailer with room retracted

## APPENDIX B

STEWART PATENT
SLIDE-OUT ROOM MECHANISM

*Fig.5.*

34. Inner fixed margin portion

46. support block (second support means)

40. trailer floor

20. slide-out room floor

CARRIAGE
SLIDE-OUT ROOM MECHANISM

A. Inner fixed margin portion

B. Trailer floor

C. Slide-out room floor

## APPENDIX C

YODER MECHANISM

Fig.21

```
    50. Slide-out room floor
    31. Trailer floor
 78/79. Roller
90/84/82. Guide member attached to outer wall of slide-out room
```

APPENDIX D

BLACK MECHANISM

53. Crank
58. Screw rod
60. Nut assembly

## APPENDIX E

### STEWART PISTON-CYLINDER UNIT

Fig. 6.

60. Trailer frame beam

78. Threaded rod

80. Nuts

## APPENDIX F

### BULAND SLIDE-OUT ROOM

INVENTOR
ARLO T. BULAND

32. Screw rod
42. Wheels

---

**ON MOTION TO ALTER OR AMEND**

This cause is before the court on Plaintiff May's "Motions Under Fed.R.Civ.P. 52, 59 and 60." Defendant filed its response to said motions on June 24, 1988. Plaintiff filed a Reply on July 8, 1988.

Although plaintiff felt it necessary to include Rule 52 in its motion, in this court's opinion, only Rule 59(e) and Rule 60 are applicable here. There was no trial either before a jury or before the bench. Therefore, Rule 52 which relates to "all actions tried upon the facts without a jury," is not applicable. Rule 59(a) concerns motions for a new trial whether there has been a trial by jury or a bench trial. Again, there was no trial here. Therefore, motions under Rules 52(b) and 59(a) serve no useful purpose. Rule 59(e), which is set forth below, is the correct rule to apply:

(e) Motion to Alter or Amend Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

Plaintiff's motion was timely under this rule.

Before ruling on plaintiff's motions, this court wishes to make note of a fine point of law which it inadvertently failed to include in its Memorandum and Order of May 31, 1988, but which it feels should be part of the record. Plaintiff had argued at least twice in its briefs relating to the summary judgment motions, that this court should only consider defendant's declaratory judgment counterclaim for invalidity with respect to the patent claims which were in issue. Plaintiff cited no authority in support of these arguments. This court rejected plaintiff's arguments based on *Application of Clark*, 522 F.2d 623, 635 (CCPA 1975) and *Kalo Inoculant Co. v. Funk Bros. Seed Co.*, 161 F.2d 981, 991 (7th Cir.1947), *rev'd on other grounds*, 333 U.S. 127, 68 S.Ct. 440, 92 L.Ed. 588 (1948). In its brief in support of its motions under Fed.R.Civ.P. 59 and 60, plaintiff has *not* refuted that rejection in any way. However, this court would like to elaborate on the issue so as to leave no stone unturned.

A very recent Federal Circuit case, *Grain Processing Corp. v. American Maize–Products*, 840 F.2d 902 (Fed.Cir. 1988), had this to say concerning a defendant's counterclaim for declaratory judgment of patent invalidity:

> There is no question that a case or controversy is a jurisdictional predicate for declaratory judgment under 28 U.S.C. § 2201. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398, 222 USPQ 943, 949 (Fed.Cir.1984); *see also Windsurfing Int'l, Inc. v. AMF, Inc.*, 828 F.2d 755, 757, 4 USPQ2d 1052, 1054–55 (Fed. Cir.1987). And "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). The actual controversy requirement precludes a declaration about the validity of claims unless the defendant objectively has a "reasonable apprehension that it will face an infringement suit" on those claims. *Webb*, 742 F.2d at 1388, 222 USPQ at 949; *International Medical Prosthetics Research Assoc. v.*

> *Gore Enterprise Holdings, Inc.*, 787 F.2d 572, 575, 229 USPQ 278, 281 (Fed. Cir.1986).

> Here, Maize has no "reasonable apprehension" it will face an infringement suit on the process claims. GPC abandoned its charge that Maize had infringed them prior to trial, and since then has "steadfastly refused to assert infringement" of those claims. There is also nothing in the record to suggest that Maize will be faced with a similar infringement suit in the future. Therefore, no case or controversy surrounds them, and the district court correctly refused to consider a declaratory judgment of invalidity. *Cf. Medical Prosthetics*, 787 F.2d at 575, 229 USPQ at 280 (existence of case or controversy must be determined from the "totality of the circumstances").

*Id.* at 905–906. In this case, defendant clearly *was* in reasonable apprehension of infringement proceedings affecting its entire product. Although plaintiff attempted to confine the issues after it was faced with the distinct possibility that several of its claims would most certainly be declared invalid, the issues in reality centered around certain phrases contained throughout the Stewart reissue. In the *Grain Processing* case, the patent holder had formally dropped the claim in question and had steadfastly maintained it would not institute another such claim. The complaint and all subsequent filings of plaintiff in this case give no clear signal to defendant that it was completely out of danger of being accused of infringement of all claims of the Stewart reissue. It is obvious to this court that plaintiff's feeble attempts to restrict this court's invalidity analysis were made only after plaintiff became concerned that such analysis might result in invalidation of many of its claims. As noted previously, plaintiff never offered legal authority for its position on this issue.

This court will now turn to plaintiff's motion under Fed.R.Civ.P. 59(e). The motion appears to be nothing more than an attempt to reargue certain issues in this case. In addition, the plaintiff faulted this court for failure to sufficiently elaborate

the basis for its conclusions that the Stewart reissue patent was void for obviousness in its entirety under Section 103. It is most doubtful that this contention is more than a technical quibble. The defendant's reply, filed June 29, 1988, contains a claim-by-claim analysis of obviousness of the dependent claims of the Stewart reissue. Although this court is most reluctant to merely adopt the defendant's analysis, at this procedural point of this case, it will do so in view of its careful review of the analysis which indicates that defendant's elaboration is most satisfactory. *See Andre v. Bendix Corporation*, 774 F.2d 786, 800 (7th Cir.1985). The relevant sections of defendant's reply brief are therefore hereby adopted and incorporated herein by reference. *See* "Defendant's Reply to Plaintiff's Motions under F.R.C.P. 52, 59 and 60" at pages 4–14, part III(B). *See also* Appendix "A" hereto.

Plaintiff's motion under Fed.R.Civ.P. 60(a) concerns a clerical mistake made in the judgment. Plaintiff is correct; a clerical error was made in which the words "is granted" were omitted. It is hereby ORDERED that the mistake be corrected and amended judgment be entered.

To summarize, plaintiff's Rule 59(e) motion to alter and amend this court's judgment is DENIED. Plaintiff's Rule 60(a) motion to correct a clerical error is GRANTED. IT IS SO ORDERED.

### APPENDIX A

B. With regard to Plaintiff's Paragraphs 11 and 12, the Plaintiff now contends that sufficient findings were not announced by the Court regarding the dependent claims of Claims 7, 27, 35 and 47. The Court, on Page 423 of its Memorandum and Order, in the Conclusion thereof, states specifically that it is granting Defendant's Motion for Summary Judgment on Invalidity of independent Claims 7, 27, 35, 47 and all claims which depend thereon. The Court also on Page 420 of its Memorandum and Order indicated that it believed it could determine obviousness based entirely upon the patents which was before it

in evidence, namely the Yoder, Lewis, Buland, Black and Rice references. The Court further states that any other prior art cited by the Examiner could only serve to enforce the determination of obviousness. Additionally, on Page 422 of its Memorandum and Order, the Court makes the finding that nothing in the Stewart Reissue Patent sets it apart from the prior art and that the patent is invalid for obviousness. As such, while the Court did not specifically mention each and every depending claim of Claims 7, 27, 35 and 47, its order is written with a clear understanding and intent that such claims were considered individually. The subject matters of the dependent claims amount to nothing more than mechanical expediences each well disclosed, as the Court correctly observed, in the prior art considered by the Court. For example:

Claim 8 of the Stewart patent calls for a "drive means interconnecting the room section and travel trailer for moving the room section between its extended and retracted positions." Such a drive means is illustrated in the telescoping screw sections of Buland and Black and the gear in Lewis. Claim 8 is therefore invalid under 35 USC § 103 as being obvious in view of the combination of Yoder and Buland, Black or Lewis.

Claim 9 of the Stewart patent calls for a drive means comprising a "power reciprocative drive means under the trailer floor." To power drive the screws and gears of Buland, Black and Lewis as one does in an electric garage door opener is not patentable.

Claim 10 of the Stewart patent calls for the drive means having an "inner member telescopically received in said outer member." Buland discloses a screw member 30 having an inner rod member 32 telescopically received in outer member 31. Therefore, Claim 10 is invalid under 35 USC § 103 as being obvious in light of Buland and Yoder.

Claim 11 of the Stewart patent calls for a drive means comprising "a double-acting fluid operated piston-cylinder unit". The substitution of a piston cylinder unit for

the drive means of Buland is of no patentable significance as such cylinders long have been used on car lifts in garages and for plow truck blades and are a common engineering design choice. Therefore, Claim 11 is obvious and invalid under 35 USC § 103 in light of Yoder, Buland, and the general state of the art.

Claim 12 calls for two first support means "one located near each side of the room section". Claim 12 is obvious in light of Yoder (Fig. 12) which uses two telescopic supports.

Claim 13 requires "the reciprocative drive means" to be "separate from and located intermediate the first two support means". The placement of the drive means between the support members is an engineering design choice. Such a construction is of no patentable significance and Claim 13 is therefore obvious and invalid under 35 USC § 103 in light of Yoder and Buland.

Claims 14, 15, 16 and 17 collectively require that the room section include a hollow beam attached below the floor thereof adjacent the room section outer end wall and extending along said outer end wall with the "reciprocative member being attached at its outer end to said room section beam". Again, the claim language in view of the prior art does not present sufficient novelty to support validity of this claim. The use of a hollow beam attached below the room section is seen in Rice. To use such a beam in Buland or Yoder would be well within the skill of the art. Therefore, Claims 14, 15, 16 and 17 are invalid as being obvious under 35 USC § 103 in view of Yoder, Buland, and Rice.

Claims 18 and 19 describe the structure wherein a plurality of traversely extending floor joists are positioned between upper and lower decks. Such a construction represents an obvious choice in engineering design, such as seen in Rice and Buland. Therefore, Claims 18 and 19 present no significant novelty and are invalid for obviousness under 35 USC § 103.

Claim 20 describes a structure wherein the "inner fixed marginal portion is tapered downward from said room section toward said floor". This Court has previously mentioned that the angle of the inner fixed marginal portion was found by the Patent and Trademark Office as not patentably significant. *Memorandum* p. 33. Therefore Claim 20 is invalid under 35 USC § 103 as being obvious in light of the general state of the art.

Claim 21 describes a second support means comprising "a support member secured to the trailer floor adjacent the opening in the wall thereof slidably supporting the underside of the room section floor for reciprocation of the room section". The Yoder reference discloses a second support member (roller 76 in Fig. 14 and 15) supporting the room extension above the trailer floor during reciprocation. It is of no patentable significance whether a block of wood in Stewart or a roller in Yoder is used as the floor support; both are used for the same purpose. Therefore, Claim 21 is invalid as being obvious under 35 USC § 103 in light of Yoder.

Claim 22 calls for the guide member extending traversely to the frame and is invalid under 35 USC § 103 for obviousness in light of the Yoder reference which discloses a longitudinal frame structure having guide means 82 traversely oriented with respect to the frame.

Claim 23 which requires the frame to be spaced inwardly from the trailer wall represents an engineering design choice such as seen in Yoder and is patentably insignificant and invalid under 35 USC § 103 as being obvious.

Claims 24, 25 and 26 relates to frame members with the guide member attached and are invalid as being obvious in the general state of the art. To suspend or hang a guide member from a frame is considered an engineering design choice which is patentably insignificant as seen in Yoder and obvious under 35 USC § 103.

Claim 28 describes an "adjustment means" comprising "rod means interconnecting said trailer and said room section". The Buland reference discloses the telescoping screw section or rod 30, previously described, for adjusting the amount of travel of the room section with respect to

the trailer. Therefore, Claim 28 is invalid under 35 USC § 103 in light of Buland.

Claim 29 which describes the adjustment means as including a threaded portion and nut means for adjusting the position of the threaded portion with respect to the trailer is also invalid under 35 USC § 103 in light of the Buland reference which discloses a rod having a threaded portion and a nut means 33 for adjusting the position of the threaded portion.

Claim 30 requiring the adjustment means to extend traversely to the frame is invalid under 35 USC § 103 as being obvious in light of the Buland reference in which rod 30 extends traversely to the trailer.

Claim 31 requiring the adjustment means to extend through the frame is invalid as being obvious under 35 USC § 103 in light of the Buland reference. Further, it is considered an obvious engineering design choice which is patentably insignificant to provide access through a frame member for extension of the adjustment means.

Claim 32 calls for the adjustment means as being attached adjacent the outer wall of the room section and is invalid under 35 USC § 103 as being obvious in light of Buland and Black. Further, securement of an adjustment means to the room section adjacent the outer end wall is considered an obvious design choice which is patentably insignificant and obvious.

Claim 33 wherein a box member interconnects the reciprocative member and the outer wall of the room section is invalid under 35 USC § 103 with the combination of Yoder, Buland, and Rice. It is considered an obvious design choice which is patentably insignificant to include a box member for interconnecting the room section outer end wall and the reciprocative member.

Claim 34 relating to a "drive means interconnecting the room section and travel trailer for moving the room section between its extended and retracted positions" in association with the adjustment means is invalid for obviousness under 35 USC § 103 in light of Yoder and the combination drive means and adjustment means disclosed in Buland and Black. The screw drives of Buland and Black serve both to drive and position the room section.

Claim 36 is substantially identical in its added subject matter to Claim 23 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 37 calls for "a guide member fixedly attached to said structure frame member adjacent said opening" and is invalid for obviousness under 35 USC § 103 in light of the Buland reference which discloses a guide member 31 being disposed adjacent the opening through the frame.

Claim 38 is substantially identical in its added subject matter to Claim 24 and is invalid under 35 USC § 103 as being obvious for the reasons therein set forth.

Claim 39 is substantially identical in its added subject matter to Claim 25 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 40 is substantially identical in its added subject matter to Claim 26 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 41 is substantially identical in its added subject matter to Claim 22 and is invalid under 35 USC § 103 obviousness for the reasons set forth therein.

Claim 42 requires the guide member to be cantilevered from said frame member. This Court has addressed the definition of "cantilevered" in its *Memorandum* p. 416. Claim 42 is invalid under 35 USC § 103 as being obvious in light of the Yoder reference. Further, to cantilever the guide member from the frame represents an engineering design choice of no patentable significance.

Claim 43 is substantially identical in its added subject matter to Claim 33 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 44 requiring a lip projecting outwardly from said one trailer side wall over the opening therewith is invalid under 35 USC § 103 as being obvious in light of Black (item 145 in Fig. 4). Additionally, the use of a lip like item 54 in Stewart is

nothing more than the well known drip lip used above outside doors.

Claim 45 requiring an upwardly extending flange located above the room section ceiling and adapted for abutting one trailer side wall is invalid under 35 USC § 103 as being obvious in light of Buland (item 46) or Black (item 87).

Claim 46 is substantially identical in its added subject matter to the combination of Claims 8 and 9 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 48 relates to opening in the frame member and is invalid under 35 USC § 103 as being obvious in light of the Buland reference as discussed with regard to Claim 35.

Claim 49 in its added subject matter is substantially like element (d) of Claim 27 and is obvious under 35 USC § 103 for the reasons therein set forth and in view of Yoder and Buland or Black.

Claim 50 is substantially identical in its added subject matter to Claim 8 and is invalid under 35 USC § 103 for the reasons therein set forth and in view of Yoder and Buland, Black or Lewis.

Claim 51 is substantially identical in its added subject matter to Claim 10 and is invalid under 35 USC § 103 for the reasons therein set forth and in view of Buland and Yoder.

Claim 52 is similar in its added subject matter to Claim 11 and is invalid as being obvious under 35 USC § 103 for the reasons therein set forth and in view of Yoder, Buland, and the general state of the art.

Claim 53 is similar in its added subject matter to Claim 12 and is invalid as being obvious under 35 USC § 103 for the reasons therein set forth and in view of Yoder and Buland.

Claim 54 is substantially identical in its added subject matter to Claim 13 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 55 is substantially identical in its added subject matter to Claim 14 and is invalid as being obvious under 35 USC § 103 for the reasons therein set forth.

Claim 56 is substantially identical in its added subject matter to Claim 15 and is invalid as being obvious under 35 USC § 103 for the reasons therein set forth.

Claim 57 is substantially identical in its added subject matter to Claim 16 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 58 is substantially identical in its added subject matter to Claim 17 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 59 is substantially identical in its added subject matter to Claim 18 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 60 is substantially identical in its added subject matter to Claim 19 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 61 is substantially identical in its added subject matter to Claim 20 and is invalid under 35 USC § 103 for the reasons therein set forth.

Claim 62 is substantially identical in its added subject matter to Claim 21 and is invalid under 35 USC § 103 for the reasons therein set forth and in view of Yoder.

Claim 63 describes a hanger means suspending the guide member and is invalid as discussed with regard to Claim 35 and further as seen in Yoder at item 83.

Claim 64 is substantially identical in its added subject matter to element (d) of Claim 27 and is invalid under 35 USC § 103 for the reasons therein set forth and as discussed with regard to Claims 27 and 35 and further in view of Black.

Claim 65 also describes the hanger as a frame member used in conjunction with a second frame member which is shown in Yoder and is invalid under 35 USC § 103.

Claim 66 is substantially identical in its added subject matter to Claim 27(d), 49 and 64 and is also invalid under 35 USC § 103 for the reasons therein set forth.

Claim 67 is substantially identical in its added subject matter to Claim 46 and the combination of Claims 8 and 9 and is inval-

id under 35 USC § 103 for the reasons therein set forth.

The subject matters of the dependent claims of the Stewart Reissue patent are but ordinary, common items of construction used and known the world over, possessing neither singly nor jointly any patentable merit. The Court's general ruling in its conclusion that such claims are invalid should suffice and dispose of the matter, although, if it wishes, the Court may adopt by reference the above specific conclusions itemized by the Defendant.